LE-GALS, INC. *v.* LEE-MAR STEEL CO. ET AL.

(No. 83 CVF 23919—Decided January 31, 1985.)

Cleveland Municipal Court.

*William A. Barnett* and *Irwin S. Haiman,* for plaintiff.
*Kenneth B. Baker,* for defendants.

ADRINE, J.

### Findings of Fact

1. The plaintiff is a duly authorized Ohio corporation located in Cleveland, Ohio, doing business as a licensed employer-paid-fee personnel placement service.

2. Defendant Lee-Mar Steel Company (hereinafter "Lee-Mar") is a duly authorized Ohio corporation engaged in various aspects of the steel fabricating and steel sales businesses.

3. Defendant Mil-Tech Corporation (hereinafter "Mil-Tech") is a wholly owned subsidiary of Lee-Mar.

4. Defendants William R. Mikler and Jerry Martin are officers of defendant Lee-Mar.

5. Plaintiff is subject to the laws governing personnel placement services found in R.C. Chapter 4143.

6. Defendant Jerry Martin (hereinafter "Martin") and plaintiff's president, Edith Silverman (hereinafter "Silverman"), had been social friends for some years before the transaction which gives rise to the instant cause.

7. Through Martin, defendant Lee-Mar contacted the plaintiff on a number of occasions prior to the event now before the court. However, defendant had never previously hired anyone referred by the plaintiff and had never paid the plaintiff a fee for any prior services.

8. Martin knew that the plaintiff primarily handled clerical and secretarial placements.

9. Nonetheless, on December 15, 1982, Martin contacted Silverman and asked her to have the plaintiff recruit up to five tonnage-steel salesmen for Lee-Mar.

10. No specific requirements were given to the plaintiff relative to the individuals to be recruited, other than that they should be knowledgeable in the general area of sales and capable of learning tonnage-steel sales.

11. Martin, on behalf of Lee-Mar, unconditionally agreed, on December 15, 1982, to pay the plaintiff's fee for the provision of the requested services.

12. Martin and Silverman had protracted discussions as to how the fee was to be paid.

13. Because of the number of potential placements, Silverman informed Martin on January 12, 1983 that plaintiff's fee would be based on one percent per thousand on a salary of $15,000 which had been quoted as the salary to be earned by tonnage-steel salesmen, excluding commissions.

14. Silverman did not qualify the plaintiff's acceptance of its fee based on the $15,000 figure.

15. Interviews of potential candidates recruited by plaintiff were held on January 12, 1983.

16. One of the candidates was George Zambo (hereinafter "Zambo").

17. Martin interviewed Zambo on January 12, 1983.

18. Martin told Silverman that Zambo was in another category and that he had special plans for him.

19. Zambo initiated follow-up contacts with Lee-Mar.

20. Some five interviews were had with Zambo. Lee-Mar eventually hired Zambo at $36,000 per year. No representative of the plaintiff was present at any of these subsequent interviews.

21. Defendants never informed plaintiff that Zambo had been hired and never paid any fee to the plaintiff for recruiting Zambo.

22. Zambo was put in charge of Lee-Mar's Mil-Tech Division, which was created especially to take advantage of Zambo's particular talents in the area of steel fabrication and marketing.

23. Some special equipment was purchased for Mil-Tech.

24. Soon after Zambo was hired, defendants discovered that he was under a restrictive covenant contained in an employment contract with a former employer.

25. The restrictive covenant prevented him from competing with his former employer in Lee-Mar's ten best accounts.

26. When Zambo attempted to work for Lee-Mar, his former employer sued.

27. Lee-Mar defended Zambo's suit and retained him in its employment.

28. The suit was decided against Zambo and he thereafter quit Lee-Mar's employment.

29. Zambo was the only one with the expertise to use the Mil-Tech equipment and the division was closed after he left.

Conclusions of Law

The plaintiff maintains that the transaction which is the subject of this lawsuit was governed by the provisions of R.C. Chapter 4143.

The clear legislative intent in promulgating R.C. Chapter 4143 is to regulate the operations of personnel placement services. In the most recent amendment to that chapter, enacted in 1981, the legislature endeavored to clarify the relationship between personnel placement services and *individual* job applicants. This was done by mandating that all contracts between personnel placement services and job applicants contain certain provisions and by setting forth the conditions precedent to charging a fee or giving a refund. See R.C. 4143.14.

Surprisingly, only one section of the chapter addresses the relationship of personnel placement services and employers. R.C. 4143.14(F) outlines under what conditions an employer is obligated to pay an "agreed to" fee to a personnel placement service *if* an applicant is terminated for lack of work.

Despite this lack of reference, the plaintiff claims that the custom and usage in the personnel placement service industry is for full employer-paid-fee agencies to look to R.C. Chapter 4143 to establish the basis for their dealings with employers. The evidence would seem to support this claim.

In seeking viable applicants for positions with the defendant company, the plaintiff served as Lee-Mar's agent. Custom and usage, therefore, may be considered in determining the plaintiff's

rights in the agency relationship. However, Lee-Mar can only be bound by custom or usage to the degree that it can be shown that it had actual knowledge of the custom or usage, or if it can be shown that it previously engaged in transactions where custom or usage was recognized.

The evidence presented at trial established that the defendants had had prior dealings with employer-paid-fee personnel placement services prior to the event which is under discussion here. The evidence did not disclose that the defendants had ever filled a position as a result of any of those dealings. In fact, there was testimony from both parties to the effect that the defendants' prior dealings with the *plaintiff* had *not* resulted in anyone's being hired.

Additionally, defendant Martin testified that while he had a general understanding of the personnel placement industry, including the fact that fees were determined as a percentage of an applicant's income, he believed that ultimately the fee would be "any deal you would work out." This testimony is supported by evidence presented at trial by both parties concerning the negotiations attempted by Martin relative to the plaintiff's fee. As a consequence, this court feels that the plaintiff has failed to maintain its burden of proof with regard to the defendants' knowledge of the existence of a custom or usage in the placement industry concerning the application of the fee-charging provisions of R.C. Chapter 4143 to employer-paid-fee personnel placement services.

We are left, then, with a question of contract. The defendants offered to pay a fee if the plaintiff would bring them prospective employees. The plaintiff accepted by supplying the prospective employees. The rub comes with regard to the issue of consideration.

Initially, the level of compensation was not a topic of discussion. Defendant Martin admitted that he never inquired as to whether there was any limitation on the plaintiff's fee and the plaintiff's proof established that there was no discussion with the defendants regarding the fee amount until approximately a month after the initial contact was made.

Had the discussion about fees comported with the plaintiff's fee schedule, the court would have no problem finding that a valid contract was thereafter brought into existence. The discussion appeared, however, to disregard the established fee schedule and limited the plaintiff's maximum fee to no more than $1,500 on each of the individuals who would be hired by the defendants. While this result was not the one which the plaintiff intended, the court believes that the January 12, 1983 discussion concerning fees operated to prevent a meeting of the minds and thereby effectively precluded the formation of a contract.

The plaintiff did provide a service to the defendants and under the theory of quantum meruit is entitled to some compensation. In determining the level of compensation to be awarded, the court must determine what benefit the defendants derived from the services which the plaintiff provided.

The defendants contend that, because of the problems which were encountered after the applicant who was referred by the plaintiff was hired, they received little or no benefit from the services provided by the plaintiff. The court does not agree.

The plaintiff was not hired to do anything other than to refer applicants to the defendants for consideration for available jobs. At the point that the defendants hired one of those applicants, they became obligated to the plaintiff.

Since, however, this cause sounds in contract, and Lee-Mar is a corporate entity, the plaintiff may not recover against defendants Martin and Mikler who are employees of the corporation.

The plaintiff is likewise precluded from recovering against Mil-Tech since the service which the plaintiff provided was provided to Lee-Mar. According to the testimony, Mil-Tech did not exist when the service was performed.

There is no basis in law or fact upon which the court can sustain the defendants' claims for damages. The plaintiff was neither instructed nor obligated to determine the existence of the restrictive covenant which applied to George Zambo. As a result, any damages which the defendants suffered on account of that cause cannot be assessed against plaintiff.

Judgment Entry

Judgment for the plaintiff and against the defendant Lee-Mar Steel Co. on the complaint in the amount of $7,000 plus statutory interest and the costs of this action.

Judgment for the defendant Jerry Martin and against the plaintiff on the complaint.

Judgment for the defendant William R. Mikler and against the plaintiff on the complaint.

Judgment for the plaintiff and against the defendants on the counterclaim.

*Judgment accordingly.*